May it please the Court, Tom Strong for Robert Stinson. This case is about the Veterans Court's willingness to accept inexpertise despite an ultra-rare cancer that required expertise. When the Veterans Court ignored its jurisdictional statute and found facts say no vote on appeal, it denied Mr. Stinson the chance to have an expert say whether his in-service skin conditions were related to his lesion manifesting cancer. Let me tell you what the problem that I see is that you may be right that the CAVC seemed to make some fact findings that weren't compelled by the record, okay, under Tadlock. The problem is that the examiner, medical examiner, found that there couldn't, the existence of these things in 64 and 67 happened so early that they couldn't be an indication of the cancer. The Board of Veterans Appeals agreed with that and as I read the Veterans Court, they relied on that also. So if they did make fact findings, I guess the question is aren't those fact findings harmless error given that the examiner supplied evidence of a lack of connection? I don't think that they are harmless error because ultimately those findings were never explicit. When in the exam itself, when we look through it, it never made it explicit, nor did the board make it explicit in its decision. And because it wasn't explicit, it didn't have a basis. And so what that did is it left the record undeveloped. And that lack of development is what prejudiced him. I'm a little confused because I thought the board was pretty explicit in their reliance on the examiner's findings. Not with respect to the in-service conditions. There was no comment on his in-service conditions and there was also no comment on his intermediate conditions from 10 years earlier, from before the cancer. On page 16 of the A-16, the board says the examiner also indicated it was highly improbable that it started in the 60s that he was trying to service given its aggressiveness and 14 month survival rate. But there was nothing specific as to his rash and as to his lesion. And that's what we're asking for, is that we think that in this case, because there was a lesion in his nose that was causing nosebleeds, and not only that, but there was also in 2002, there was also a cystic mass on his back that we can clarify here. He's had a cystic mass, a lesion, and then he had the cancer itself. So these things all suggest that they're related and that it is at least debatable that that matters. And the Veterans Court tried to make clarity where there was debate and that really should have been left to the experts. Had you made the arguments to the board about the symptoms that manifested themselves in service? We did not. But Mr. Stinson was not represented by counsel at the board, and he was not a medical expert. And the other thing is, is that the board, the VA, has a duty on its own to raise these issues that when you see in-service conditions that could be related to a carcinogen, it's to raise them for the veteran. Because he's not in a position, he's struggling with cancer. He's not in the best position to raise those. Okay. I get all that. But by the time the case gets to the Veterans Court, with him not having raised the issues, for understandable reasons perhaps, at the board level, doesn't the Veterans Court have the at least discretion to look at the totality of the record and then react in the way that it did? And in Tadblock, it looked at the totality of the record in the context of a prejudicial error review. And you're allowed to look at the record, but it's, and we're not looking at the factual findings themselves. We're looking at how the Veterans Court weighed these findings. And when you look, it didn't have what it lacked discretion is, it had to have a predicate fact-finding at the board in order to make its, in order to uphold on that basis. But there's no predicate fact-finding because the argument wasn't made to the board, right? Correct. So the implication of your argument, if I'm following it, is the court of, the Veterans Court did not have any discretion. It was obligated to remand at that point. Once the argument was made to it, that had not been made below? So, the Veterans Court was obligated to remand the case because it was inadequate. Not to fill the gaps for the board. The board needed to do that before so that it had a cogent decision that the Veterans Court could review. I suppose the Veterans Court had said, there's an examiner finding that it's unlikely that this cancer went back to the service period in the 1960s because of the way the cancer operates. And they'd said, we're now confronted with an argument that the specific indicators, the rashes, the nose blades, were indications of incipient cancer and any such connection is covered by the examiner's findings that it was too long ago to be significant. That was not said in the, okay, but at the same time, when Mr. Stinson's experts, his treating physicians at Duke Medicine. Suppose they'd said that. Suppose the CAVC, the Veterans Court, had said what I just said. Would that be sufficient? I'm sorry, I didn't. Okay, let me try again. Suppose the Veterans Court had said, for the first time, we're confronted with arguments that there were physical manifestations that were relevant here. The rash, the nosebleed, whatever. But we have a general finding by the examiner that this cancer wouldn't manifest itself that long ago because it's so aggressive. And therefore, these new arguments don't require any remand or further consideration. Suppose they'd said that. If it had been that explicit, then I think he would be stuck. Yeah, okay. They did have some options other than just having to remand, but they did not do what the question implied.  I think so. I think so. Is it your position that the VA court re-weighed evidence that it shouldn't have? Yeah, I think that that's what they ultimately did is that with respect to his rash that was in the same place, they, I mean, when you say weigh, they placed it on his shoulder when his doctors had said it was on his upper back. And his upper back is where that firm cystic mass was and also where his cancerous lesion was. Yes. And that's what Chief's saying is the facts of finding that the Veterans Court should not have made. So it weighed whether it was on his shoulder, according to Mr. Stinson, and it weighed whether it was on his back, according to his doctors, and it chose Mr. Stinson because that disconnected the cancer from service. When the Veterans Court ignored reasonable experts in Section 5103A and applied Carter instead, the Veterans Court denied Mr. Stinson the chance to have his experts say if service connection was as likely as not. And I think one point that I really want to make to the court is that there, it seems to be that there was a, in the briefing, we talked about whether there, this was really just a request for a new exam or whether this was like, whether he was asking for clarification. Under the statute, under Section 5103AD, an exam is necessary when there is not enough evidence to decide the claim. And that can be true at the same time as under Section 5103AA2, when it says that no possibility can exist that the evidence will help the Veteran. So in a rare case like this, where you're dealing with a ultra rare cancer, there's still a reasonable possibility that having his treating physicians opine on the likelihood that his cancer and these conditions are connected, you can have both of those going on at once. They're not mutually exclusive. So you can have an exam and you can also have his treating physician opine. And if you read the examiner's own finding, she was, when she was writing the exam from the VA, she was very deferential to his experts at Duke, to the point where she made it sound like, hey, I'm going to leave these to, leave this to those experts. Because they're world-class cancer physicians in oncology, and they're treating him in this rare case. So it makes it, there'd be a reasonable possibility that that opinion, that statement of the likelihood really could help Mr. Stinson. So are you arguing there should have been a clarification from the treating physician or a new exam or both? Because the exam lacked the information on his in-service conditions, on his prostate cancer, on his leukopenia, on all of these conditions that sometimes can evolve from carcinogenic exposure, I think that you can say that a new exam was necessary and also that his, that clarification was also necessary at the same time. But if you were to get, if you were to get a new exam, it may not be that clarification was necessary because now you have those gaps filled. Now they've spoken to whether these conditions are related to his cancer. And that way, Mr. Stinson has a full view of his evidence. But with that, unless there are any more questions, I will take a seat. Okay. Thank you. Is Mr. Stinson still alive? He is. And he's a very, very tough guy. And so it makes me glad that we have a veteran as strong as him defending our country. So with that, I'll take a seat. Okay. Thank you. Go ahead. May it please the Court. The Veterans Court's decision should be affirmed. So I'll begin with... The Veterans Court did make some fact findings, right, that really aren't compelled by the record. So what the Veterans Court did here is what this Court has instructed it to do and what we understood Mr. Stinson to be asking the Veterans Court to do, which is to look for an argument that wasn't expressly raised by Mr. Stinson before the Board, to look at the record and assess whether the argument was reasonably raised by the record. So the problem that Mr. Stinson has, one problem he has, is he's making assertions about his service... You've got to answer my question. Isn't it true that they made some fact findings that aren't compelled by the record? I mean, particularly as to the placement of the rash, for example. So I'm just... It's debatable. So the way I would characterize it is the Veterans Court was deciding whether issues were reasonably raised by the record before the Board. I'm happy to talk about why that wasn't impermissible fact finding to do so. First of all, I think the Veterans Court was required to do that. So it certainly allowed to look at the evidence. So point one on the rash. So Mr. Stinson himself was the one who said it was on his shoulder. His doctor said it was on the upper back. Both the upper back and the shoulder are part of the torso, which are different places than the neck and also a different place than the nose. So that would be the point that it's undebatable. The second point is the Veterans Court was reviewing the arguments as they were presented by the parties. So the Secretary pointed in his response brief to the fact Mr. Stinson's testimony about the shoulder. You would think in his reply brief that Mr. Stinson would have warned the Veterans Court, no, no, no, this is a disputed issue. You can't rely on my own client's testimony to make the Veterans Court aware that it was resolving a disputed factual issue here. The Veterans Court, based on the briefing, didn't have any reason to think it was doing so. So that goes to a claimant's responsibility before an appeal to explain their arguments to provide reasons for what they're asking the court to do. And if there's testimony from the claimant himself about an issue, the Veterans Court should be able to presume they can rely on that unless the claimant, in briefing, explains why that isn't so. And then the third point is there's a missing element here, which is a connection between the service treatment records and the disability. So there has to be competent medical evidence to speak to any sort of causation issues, the relationship between a disability and medical records. And there just isn't any medical evidence that Mr. Stinson pointed to either before the Veterans Court or this court, for that matter. You can imagine that evidence taking different forms. You can imagine it being testimony from or a report from a medical expert. He submitted a nurse practitioner's report that didn't discuss the service treatment records. He could have submitted different reports from different physicians or medical experts that gave the board the sort of link or gave the Veterans Court the link between the disability and the service treatment records, but he didn't do so. Or it can take the form of treatises. But again, on appeal before this court and before the Veterans Court, there was just no medical evidence. So what appellate courts certainly are able to do is recognize when there's no evidence to support an argument and decline to remand because there would be nothing to direct the board to look at in terms of establishing the causal link, which is what Mr. Stinson ultimately needs to establish. And as Judge Dyke, your questions pointed out, the VA and the board had evidence before it that the Veterans Court decided was adequate in the form of a VA examiner's report that said there's no link. And that's what the VA relied on, that's what the board relied on, and the adequacy, contrary to some of Mr. Stinson's assertions here, the adequacy isn't at issue. So there's no real question about whether the VA should have gotten a more specialized opinion or a more detailed opinion, or there should have been more of a response in the VA examiner's report to the private examiner because that was adjudicated by the Veterans Court. Can you show me where in the record the VA examiner considered the 1960s service symptoms? So at Appendix 107, the VA examiner says she checked, so there's a box that, or there's a heading that says Evidence Review, and next to VAE folder is there's an X. So my understanding from VA is the service treatment records were added to that folder, I think in 2014. So the examiner would have, based on the record, the examiner would have reviewed the service treatment records. Ultimately, though, that issue goes to the advocacy. Does this show that the examiner considered the 1960s service symptoms? What it shows is that she, as part of the evidence review, she looked at what was in the VAE folder, and my understanding based on what VAE... Okay, the answer is no, right? It shows that she looked at what was in there, and I'm representing to you, this is not in the record, but I'm representing to you based on conversations with VA that... Okay, does this show that the VA examiner considered the 60s service symptoms? It showed that she reviewed the records, it supports the view that she reviewed the record. It doesn't show anything beyond that. But again, that ultimately goes to the advocacy of her or the VA examiner's report, which is not before this court. It goes to what? The adequacy of the VA examiner's report, and that was adjudicated by the Veterans Court, and it's not...it's a factual issue where application is a lot of fact, and it's not before this court. Can we consider a harmless error here? Can we make a harmless error determination if we think, notwithstanding your arguments, that there was some fact-finding made by the Veterans Court? Yes. So there was, again, there was an adequate exam done by the VA medical examiner that opined on this causation issue, and it was credited by the board. The board found it persuasive, and the Veterans Court affirmed. So that would be a basis for a harmless error determination. Yes, Your Honor. Where is, I think, one of the arguments on the other side is your... what you just said is not really specifically laid out with care by the Veterans Court. Do you agree or disagree with that? Well, what the Veterans Court...the Veterans Court affirms the... so the Veterans Court is reacting to the arguments as they're presented by Mr. Stinson, and it affirms the adequacy of the VA examiner's report and rejects a conclusion or rejects the assertion that the board's reasons and bases were insufficient. So in that sense, it logically follows from that, what I just said, which is that the board's decision was based upon an adequate medical determination on causation, and that was a sufficient...the board had a sufficient basis to come to that conclusion. They don't, though, the Veterans Court ever clearly tell us, absent our own fact-finding or our own assessment of what's in or not in the record, we could rely simply on the VA exam, and that would be sufficient to uphold the board. They're not that clear about that, are they? So the conclusion is the board did not clearly err in relying on the 2019 VA examination, which I think is the same point, but maybe is not quite as clearly expressed as Your Honor just expressed it, Judge Stark. And then the Veterans Court goes on to consider the different arguments raised by Mr. Stinson, and ultimately the conclusion is he hasn't borne his burden of showing that the record reasonably raised an issue that he didn't himself directly address. And again, that conclusion is supported by the fact that there's just no evidence in the record establishing the causation link between the service treatment records and the disability, and I think that would go to a harmless error determination as well. If this went back, there would be nothing to close the gap between the service treatment records and the ultimate issue here. You may have already said this, so forgive me if you did. Why, if it went back, would there not be the obligation to supplement the record to assist the veteran to either clarify the 2016 opinion or get a new medical opinion or both? Well, so there wouldn't be an obligation. I think Your Honor's asking about the duty to clarify points that Mr. Stinson's arguing about, the piece that Mr. Stinson's raised arguments about. So the first point on the duty to clarify, the Veterans Court's applying its own precedent, Savage and Carter, and the upshot of that precedent is… I think you're misconceiving the question. Judge Stark can correct me if I'm wrong. I think what he was asking you is not in relation to the nurse practitioner report, but with respect to the harmless error issue as to whether the CAVC should have recognized that there was a new argument here and sent it back to have some development, new evidence about the significance of the rash and other symptoms. So our position is in the absence of the causal link, evidence establishing that causal link, there would be no reason to send it back or there would be no obligation to send it back. Ultimately, it is not the case that any time a claimant raises a new argument before the Veterans Court that there's an automatic remand. That would slow things down greatly. And I think the Veterans Court was appropriately looked at whether the record reasonably raised this issue. So the answer would be that for system-wide reasons, it is logical to have this rule. And by the way, this rule is an alternative to a strict issue exhaustion rule, which would be another alternative and would be worse for claimants. This gives claimants an ability to argue to the Veterans Court that there was something reasonably raised by the record such that a remand is appropriate. So it balances those different considerations. Well, I guess what I hear you doing is providing rationales that the Veterans Court could have used to justify what it did, but which it didn't, in fact, rely on. Instead, it sort of grasped at straws. Well, we're going to deal with this problem by saying that the rash was on the shoulder or back or whatever it was and that we don't have to worry about it because it wasn't in the right place. So first, I think the reason, the basis for why the Veterans Court wrote its opinion the way it did, becomes clearer when you review the briefing before the Veterans Court and see how the issues were framed for the Veterans Court. So that's the first point. The second point is it does cite the Bankhead case a couple different times, the Veterans Court does. And I believe that's a case that's talking about this court's jurisprudence on TDIU and issues reasonably raised by the record. So my understanding is the Veterans Court is really alluding to these same sorts of issues and considerations when it cites Bankhead and when it imposes this burden on Mr. Stinson to affirmatively raise the evidence. He thinks the board should have considered, explained why it's reasonably raised by the record and put those arguments before the Veterans Court so the Veterans Court actually has that information in front of it and can make an informed decision to say, okay, you didn't raise this before the board, but the board nevertheless erred by not considering it. I think we might have a case that says we can't do harmless error analysis if it would require fact-finding or application of law to fact. If, in fact, that is our law, how could we do harmless error analysis here? So I think with the court, the basis for harmless error analysis would be a recognition that there's no connecting evidence between the disability and the service treatment records. And that would be analogous to what a trial court would do in granting summary judgment because there's no evidence in the record to support a specific point. So we would not understand that to be a type of fact-finding the court's not allowed to do on appeal. So that we think the court can do. Alternatively, if the court concludes it's undebatable and agrees with our position on that, then that would be another basis. Okay. Anything further? No. Thank you, Your Honors. If there are no further questions, we ask that the court affirm the Veterans Court's decision. Thank you. Thank you, Mr. Strong. No one ever explicitly addressed his in-service conditions. The examiner didn't. The board didn't. No one talked about his rash. No one talked about the lesion that was bleeding out of his nose on a recurring basis. And I want to just note that in Tadlock, it was one of the findings that's almost identical in the logical structure of the finding in Tadlock is almost identical to the finding that the nose bleeds. There's no evidence in the record about nose bleeds that show carcinogen exposure. And in Tadlock, they did not find harmless error. But I want to talk a little bit about the causation element, the causation. There's a couple of ways. If you look at Appendix at 615, what you can see is this is a note where one of his treating physicians at Duke begins talking about the firm cystic mass on his upper back in 2002. And by making that mass relevant, it shows that this skin condition, prior skin conditions, can be relevant. Because if you take that and you follow the logic back to 1964 and 1966, when he's having these rashes and these lesions, those two, by extension, are also relevant. Another way that we can establish a relevance and causation is through the presumptions in the regulations. Prostate cancer is presumed to be linked to radiological carcinogenic exposure. He had prostate cancer in 2004. Leukopenia, which he also had in earlier days. And thrombocytopenia. These are also linked to cancer. And it makes sense. But those arguments aren't made in your brief here, right? They are. I cite to the... Prostate cancer? I cite to the regulations. I cite to the specific regulations. Where's the argument? I think it's... If you look in the table to my brief, it's cited to 3.156 in the regulations. And those regulations relate the case so that there is a chain of causation. So it seems that the Veterans Court made a ruling on considering the proximity of the injuries to each other. Right. Right? And decided that it wasn't relevant. That that was not relevant. Do you consider that to be fact-finding? And if so, can it lead to harmless error? I do. Because service connection, it goes straight to service connection. And when you disconnect the placement, because implied, the Veterans Court thought that that was important. The placement of the rash. And that if it was in a different place than where the rash, excuse me, where the carcinogenic, where the cancerous lesion was, it's implied in that that that's an important fact. And that fact was used to uphold the exam as adequate. And so it implies that if you connect them by saying that, well, if we follow what his doctors say, and we see that it is in the same place as his cancerous lesion, it's also in the same place as his 2002 mass, and it's also in the same place as his rash. It's been important to everyone, from the medical experts, the doctors, who tee up their analysis of the cancerous lesion by mentioning the firm cystic mass from a decade earlier. And also it's implied in the Veterans Court decision that it's important to them. Could you show me where, I'm not seeing where you argued about the prostate cancer. So, yeah. So in the tables. What? Your blue brief? It's in the opening brief. There's a reference to this. 3.159, is that what you mean? Yeah, that's it. H20? That's it. No, no, no, I don't think it's 3.159. Is it not? Okay. 3.102, it could be 3.102. But I definitely reference it in the brief. 3.102. 3.102 is in your gray brief at page 2. Is that where you mean to turn us? I looked at this yesterday, and I found the regulation in my brief in order to reference today. And it's in here. We'll look at it. I'll just ask one last question. You asked us to overturn Carter. You don't challenge Savage. Is that right? Well, what the Veterans Court said is that the Veterans Court said that building on Savage, or it narrowed Savage. Carter. Yeah, yeah. So Carter narrowed Savage. Right. So you asked us to overturn Carter, but you're content with Savage. I'm not. I'm not. What I think, if I had any weight in this, I would have the court turn it into a factor test rather than a bright-line rule. Is there any request in your briefing to overturn Savage or a challenge to the application of Savage? There is. There is. Not to Savage itself, but to Carter. I'm basically Carter. My problem is your argument is Carter narrows Savage. You clearly put in front of us we should overturn Carter, but I read that to mean you're fine with us applying Savage. But now you're telling me that was not your intent. I would say that I would like you to overturn Savage. Right, but we didn't hear that in the briefing, right? I'm not sure. In relation to the question that Judge Dyck was asking you, I think it may be page two of the gray brief that speaks as to pro se cancer. Yes. All right. Thank you. Thank both counsel. The case is submitted. That concludes our session.